UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EDWIN DUANE LEWIS,

                Plaintiff,                Case No. 1:14-cv-917

v.                                      Honorable Janet T. Neff

DANIEL SPITTERS et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act (RA), 29 U.S.C. § 791 *et seq.* The Court has granted Plaintiff leave to proceed *in forma pauperis.* Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will serve the complaint against all Defendants except Plaintiff's Eighth Amendment claim against Defendants Cracik, Lamb and Russell will be dismissed with prejudice for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF).  He sues the following LRF personnel: Physician's Assistant Daniel Spitters and Nurses Mark A. Kranitz and Judy Cracik.  Additionally he sues Lakeland Correctional Facility Nurse Practitioner Raymond G. Ingraham; Northern Region Office Nurse Patricia Lamb; and Office of Legal Affairs, Grievance Section Manager, Richard D. Russell.

On January 10, 2013, Plaintiff was transferred to LRF.  Plaintiff was interviewed by Defendant Kranitz for intake screening and medical questions.  Defendant Kranitz gave Plaintiff two Special Accomodation Notices (SAN), but Plaintiff noticed that his accommodation for medically necessary athletic-style shoes was not on the SAN.  Plaintiff alleges that as a result of chronic problems with his feet, including a chronic fungal skin infection, tinea versicolor, plantar fascitis and low arches, he cannot use the state-issued oxfords and requires athletic-style shoes.  Plaintiff must have a special accommodation to allow him to obtain athletic-style shoes.  Plaintiff informed Defendant Kranitz of the error and requested that the SAN include an accommodation for athletic-style shoes.  Defendant Kranitz refused Plaintiff's request.

On January 15, 2013, Plaintiff filed a grievance as a result of Defendant Kranitz's refusal to include an accommodation for athletic-style shoes.  Sherri Castenholz, who is not a defendant, and Defendant Cracik denied Plaintiff's grievance and explained that Plaintiff's SAN for athletic-style shoes had been discontinued before Plaintiff was transferred to LRF.  Plaintiff alleges that Defendant Ingraham improperly cancelled his SAN for athletic-style  shoes.

On February 19, 2013, Plaintiff filed a Step II appeal.  Defendant Lamb denied Plaintiff's grievance at Step II.   Plaintiff appealed to Step III, and Defendant Russell denied Plaintiff's Step III appeal.

On July 15, 2013, Plaintiff met with Defendant Spitters for a medical examination in connection with Plaintiff's progressive hearing loss and the difficulty Plaintiff was having hearing while using the headphones and earbuds the MDOC has approved for prisoners to purchase. Plaintiff explained to Defendant Spitters that the headphones and earbuds approved by the MDOC are inadequate due to his hearing impairment and when "people speak their voices sound[ ] like mumbling and it is difficult to understand." (Compl., docket #1, Page ID#9.) Additionally, Plaintiff explained to Defendant Spitters that the MDOC-approved headphones and earbuds are not compatible with his hearing aid.  Defendant Spitters refused to provide Plaintiff with an SAN to purchase his own headphones and earbuds from an approved vendor and told Plaintiff to file a grievance.

On July 22, 2013, Plaintiff filed a grievance regarding Defendant Spitters' refusal to provide an SAN for Plaintiff to purchase his own headphone and earbuds.  In the grievance, Plaintiff explained that while listening using the MDOC-approved headphones and earbuds, "television voices sound muffled and musical sounds can't be distinguished between violins and flutes." (*Id.*) Plaintiff also explained that for the last 6 years he had been permitted to purchase his own headphone and earbuds that are not on the approved standardized property list, but are purchased from an approved vendor.  Plaintiff's grievance was denied at Step I by Ms. Castenholz and Defendant Cracik.  Plaintiff appealed.  Plaintiff's Step II grievance was denied by Defendant Lamb and his Step III grievance was denied by Defendant Russell.

During his July 15, 2013 examination by Defendant Spitters, Plaintiff also requested a SAN for orthopedic, box-toe shoes as a result of chronic problems with his feet. Plaintiff's chronic fungal infection is made worse by being required to wear ill-fitting, state-sanctioned, oxford-style shoes. Defendant Spitters denied Plaintiff's request for a SAN. Additionally, Defendant Spitters failed to treat the fungal infection of Plaintiff's big toe. Although Defendant Spitters prescribed Nystatin cream for the infection, it was not effective because Plaintiff was required to wear the ill-fitting, state-sanctioned oxford-style shoes which fail to provide sufficient space between the infected toes to slow fungal growth. Plaintiff filed a grievance which was denied at Step I by Ms. Castenholtz and Defendant Cracik, at Step II by Defendant Lamb and at Step III by Defendant Russell.

Additionally, during the July 15 examination by Defendant Spitters, Plaintiff sought a permanent SAN for a bottom bunk due to pain from osteoarthritis in his right shoulder. On September 18, 2012, Plaintiff's physician determined that Plaintiff was suffering from osteoarthritis in his right shoulder. Plaintiff was provided with a permanent prescription for ibuprofen. Defendant Spitters denied Plaintiff's request for a permanent bottom-bunk SAN. Plaintiff filed a grievance which was denied at Step I by Ms. Castenholtz and Defendant Cracik. Plaintiff's Step II and Step III grievances were denied by Defendants Lamb and Russell, respectively.

Plaintiff alleges that he sought and was refused SANs for medically necessary athletic-style shoes, for box-toe orthopedic shoes, for a permanent bottom-bunk placement and for permission to purchase headphones and earbuds from an approved vendor. Plaintiff alleges that Defendants' failure to provide the requested SANs interferes with his ability to enjoy major life

activities and discriminates against him because he is being forbidden from obtaining SANs which are being given to other similarly situated prisoners.

Plaintiff alleges claims against all Defendants for violation of the Eighth Amendment, ADA and RA.  As relief, he seeks monetary damages and equitable relief.

## II.   Immunity

### A.   ADA

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  In order to state a claim under Title II of the ADA, Plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and

vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).  Plaintiff has named Defendants Spitters, Karnitz, Ingraham, Cracik, Lamb and Rusell, whom Plaintiff alleges are MDOC officials, in their official capacities**.**

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA.  The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482.  If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity.  *Id.*  At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.  Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants Spitters, Karnitz, Ingraham, Cracik, Lamb and Russell.

## B.    RA

The RA provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  A "program or activity" includes the operations of "a department, agency, . . . or other instrumentality of a State . . . ." 29 U.S.C. § 794(b)(1)  The requirements for stating a claim under the RA are substantially similar to those under the ADA, except that the RA specifically applies to programs or activities receiving federal financial assistance.  By accepting these funds, states waive sovereign immunity from claims under the RA.  *Nihiser v. Ohio EPA*, 269 F.3d 626,

628 (6th Cir. 2001).  For purposes of this Opinion, the Court will assume that the MDOC receives federal assistance for the prison programs and activities at issue.

In addition, the RA provides that any discrimination be "solely" by reason of the plaintiff's disability, which is slightly stricter than the standard in the ADA.  *See* 29 U.S.C. § 794(a).  Also, like the ADA, the RA does not impose liability on individuals.  *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004).  Because the statutes are so similar, the Court will assume that Plaintiff states an RA claim against Defendant Spitters, Karnitz, Ingraham, Cracik, Lamb and Russell in their official capacities.  *See Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 (6th Cir. 2000) ("Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together."); *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other."); *see also Owens v. O'Dea*, No. 97-5517, 1998 WL 3440, at *2 (6th Cir. May 27, 1998) ("Congress has dictated that Title II of the ADA be interpreted in a manner consistent with section 504 of the RA.") (citing 42 U.S.C. §§ 12134(b), 12201(a)).

### III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Eighth Amendment Claim

Plaintiff fails to make specific factual allegations against Defendants Cracik, Lamb or Russell, other than his claim that they failed to conduct an investigation in response to his grievances and wrongly denied his grievances. Government officials may not be held liable for the

-8-

unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Cracik, Lamb and Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state an Eighth Amendment claim against them.

Plaintiff alleges that despite his serious medical need for a variety of special accomodations, Defendants Spitters, Karnitz and Ingraham failed to provide him with accommodations. Specifically, Plaintiff alleges that Defendants Karnitz and Ingraham failed to provide him with a SAN for athletic-style shoes despite his serious medical need for such shoes. Additionally, Plaintiff alleges that Defendant Spitters failed to provide him with a SAN for box-toe, orthopedic shoes, a permanent bottom-bunk placement and the ability to purchase headphones and earbuds that were compatible with his hearing impairment and hearing aids despite his serious medical needs for such items.

-9-

At this juncture, Plaintiff's allegations are sufficient to warrant service of his Eighth Amendment claim against Defendants Spitters, Kranitz and Ingraham.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the Court will serve the complaint against Defendants Spitters, Kranitz, Ingraham, Cracik, Lamb and Russell with respect to Plaintiff's ADA and RA claims.  Additionally, the Court will serve the complaint against Defendants Spitters, Kranitz and Ingraham with respect to Plaintiff's Eighth Amendment claim.  The Court will dismiss Plaintiff's Eighth Amendment claim against Defendants Cracik, Lamb and Russell for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An Order consistent with this Opinion will be entered.


Dated:  October 15, 2014                 /s/ Janet T. Neff                                
                                        Janet T. Neff
                                        United States District Judge