UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWIN LEWIS,

    Plaintiff,                                 Hon. Janet T. Neff

v.                                              Case No. 1:14-cv-917

DANIEL SPITTERS, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Defendants' Motion for Summary Judgment, (Dkt. #19), and Defendants' Motion for Summary Judgment, (Dkt. #30). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion, (Dkt. #19), be **granted** and Defendant's motion, (Dkt. #30), **granted in part and denied in part**.

**BACKGROUND**

        Plaintiff initiated this action on August 28, 2014, against the following medical care providers and prison officials: (1) Daniel Spitters; (2) Mark Karnitz; (3) Judy Gracik; (4) Raymond Ingraham; (5) Patricia Lamb; and (6) Richard Russell. Plaintiff subsequently amended his complaint. (Dkt. #10). In his amended complaint, Plaintiff asserts five distinct claims.

        In Count I, Plaintiff alleges that Defendants Karnitz, Lamb, Gracik, Russell, and Ingraham refused to provide him with a special accommodation for "athletic style" shoes. In Count II, Plaintiff alleges that Defendants Spitters, Lamb, Gracik, and Russell failed to approve his request for

a particular audio assistive device. In Count III, Plaintiff alleges that Defendants Spitters, Lamb, Gracik, and Russell failed to provide him with special "box toe" shoes. In Count IV, Plaintiff alleges that Defendants Spitters, Lamb, Gracik, and Russell failed to provide him with a permanent bottom bunk accommodation. Finally, in Count V, Plaintiff alleges that Defendants Spitters, Gracik, and Russell improperly discontinued his pain medications. Plaintiff alleges that these actions violated his rights under the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth Amendment. Plaintiff's Eighth Amendment claims against Defendants Gracik, Lamb, and Russell have already been dismissed. (Dkt. #9). Defendants Lamb, Gracik, and Russell, (Dkt. #19), and Defendants Ingraham and Spitters, (Dkt. #30), now move to dismiss Plaintiff's remaining claims on the ground that Plaintiff has not properly exhausted such.

## EXHAUSTION STANDARD

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary

>  in a grievance to comply with the grievance procedures will vary from
>  system to system and claim to claim, but it is the prison's requirements,
>  and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

## ANALYSIS

**I.        Plaintiff's Grievances**

In support of the present motions, Defendants have submitted evidence regarding the various grievances Plaintiff has submitted during the time period relevant to this matter.[1] An examination of these grievances reveals that, with two exceptions, Plaintiff's remaining claims must be dismissed for failure to properly exhaust administrative remedies.

**A.        LRF-13-01-0081-12i**

Plaintiff filed this grievance on January 15, 2013, against Defendant Karnitz. (Dkt. #20 at Page ID#232-50). Plaintiff alleged that Karnitz improperly denied his request for a special accommodation to receive certain athletic shoes. This grievance was pursued through all three steps of the grievance process.

**B.        LRF-13-04-0516-07a**

Plaintiff filed this grievance on April 4, 2013, challenging the confiscation of certain items of personal property. (Dkt. #20 at Page ID#222-31). Plaintiff's amended complaint does not assert any claims regarding the alleged confiscation of personal property. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

---

[1] Plaintiff has not identified any additional grievances that he allegedly pursued during the relevant time period.

      C.      LRF-13-07-1141-28e

Plaintiff initiated this grievance on July 22, 2013, alleging that Defendant Spitters failed to properly treat his hearing impairment. (Dkt. #20 at Page ID#217-21). This grievance was rejected as untimely at Step III of the grievance process. Accordingly, this grievance fails to properly exhaust any of Plaintiff's remaining claims.

      D.      LRF-13-07-1094-28e

Plaintiff initiated this grievance on July 22, 2013, alleging that Defendant Spitters refused his request for an audio assistive device. (Dkt. #20 at Page ID#205-16). This grievance was rejected as untimely at Step III of the grievance process. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

      E.      LRF-13-07-1105-28e

Plaintiff initiated this grievance on July 22, 2013, alleging that Defendant Spitters refused his request for special "box toe" shoes. (Dkt. #20 at Page ID#200-04). This grievance was rejected as untimely at Step III of the grievance process. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

      F.      LRF-13-07-1095-28e

Plaintiff initiated this grievance on July 22, 2013, alleging that Defendant Spitters refused his request for a permanent bottom bunk accommodation. (Dkt. #20 at Page ID#195-99). This

grievance was rejected as untimely at Step III of the grievance process. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

      G.    LRF-14-04-0592-12f

Plaintiff initiated this grievance on April 10, 2014, alleging that Defendant Spitters refused his request for certain pain medication. (Dkt. #20 at Page ID#187-91). This grievance was pursued through all three steps of the grievance process.

**II.**    **Defendants Lamb, Gracik, Russell, and Ingraham**

Defendants Lamb, Gracik, Russell, and Ingraham are not identified in any of the aforementioned grievances. Plaintiff responds to such by asserting that "MDOC grievance policy does not require naming specific individuals." (Dkt. #23 at Page ID#271). This is simply incorrect. As previously noted, the MDOC grievance policy expressly obligates prisoners to include in any grievance the "names of all those involved in the issue being grieved." The Sixth Circuit has held that failure to comply with this requirement mandates dismissal of the claim in question. *See, e.g., Peterson v. Cooper*, 463 Fed. Appx. 528, 530 (6th Cir., Feb. 23, 2012). Plaintiff appears to argue that his failure in this regard should be excused because he was unaware of Defendants' names and identities when he submitted the grievances in question. Even if such were the case, Plaintiff was nevertheless obliged to indicate in his grievance that the matter was being pursued against additional individuals whose identities had not yet been ascertained. *See, e.g., Hall v. Warren*, 443 Fed. Appx. 99, 105 (6th Cir., Oct. 18, 2011). Plaintiff failed to indicate that the grievances in question were being pursued against or concerned anybody other than the individuals specifically identified therein. Having failed to put prison

officials on notice of his grievances against Defendants Lamb, Gracik, Russell, and Ingraham, Plaintiff has failed to exhaust his claims against these defendants. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Lamb, Gracik, Russell, and Ingraham be dismissed for failure to properly exhaust administrative remedies.

**III.      Defendant Karnitz**

The only claim asserted against Defendant Karnitz in Plaintiff's amended complaint is that Karnitz refused to provide Plaintiff with a special accommodation for "athletic style" shoes. Plaintiff has properly exhausted this particular claim. (Dkt. #20 at Page ID#232-50). Recognizing this, Defendant Karnitz has not moved for dismissal of this particular claim. (Dkt. #19 at Page ID#172).

**IV.      Defendant Spitters**

Defendant Spitters and others are named in Counts II-V of Plaintiff's amended complaint. As noted above, Count II alleges that Defendants failed to approve Plaintiff's request for an audio assistive device. Count III alleges that Defendants failed to provide Plaintiff with special "box toe" shoes. Count IV alleges that Defendants failed to provide Plaintiff with a permanent bottom bunk accommodation. Count V alleges that Defendants improperly discontinued Plaintiff's pain medications. Plaintiff submitted grievances concerning each of these alleged incidents. (Dkt. #20 at Page ID#187-221).[2] However, all but one of these grievances were rejected as untimely. (Dkt. #20 at Page ID#195-221). The only grievance that was properly pursued through all three steps of the grievance process concerned Plaintiff's claim, in Count V of his amended complaint, that Defendant Spitters improperly

---

[2] These grievances are described in Section I, subsections C-G above.

discontinued his pain medications. (Dkt. #20 at Page ID# 187-91). Accordingly, Counts II-IV must be dismissed for failure to exhaust administrative remedies. Defendant Spitters further argues that Count V must also be dismissed because Plaintiff initiated the present action before completing the grievance procedure regarding this particular claim. The Court disagrees.

Defendant is correct that Plaintiff initiated the present action prior to receiving the response to his Step 3 grievance. At first glance, it would appear that this requires dismissal of the claim in question. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"). A closer review of MDOC policy, however, mandates a different conclusion.

MDOC policy provides that the grievance process shall be completed within 120 calendar days of the date on which the Step I grievance was filed. Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S. MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T. Thus, if prison officials fail to respond to an inmate's Step III grievance by the end of the aforementioned 120 day period, the inmate should be able to initiate, without fear of dismissal on exhaustion grounds, an action in federal court. This is because in such a circumstance, the inmate has completed the administrative process as defined by the MDOC and the MDOC's failure to comply with its own guidelines should not provide a basis for the dismissal of the inmate's lawsuit.

As the Court has recognized previously, to conclude otherwise would enable MDOC officials to obtain through subterfuge the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only to ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a

lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process. Defendant has identified no authority which has interpreted the PLRA in such a manner and the Court finds such an interpretation quite illogical. When Plaintiff initiated the present action, more than 120 days had passed since his Step I grievance was filed. Accordingly, the undersigned recommends that Defendant Spitters' motion to dismiss be granted as to Counts II-IV of Plaintiff's amended complaint, but denied as to Count V of Plaintiff's amended complaint.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #19), be **granted** and Defendants' Motion for Summary Judgment, (Dkt. #30), be **granted in part and denied in part**. Specifically, the undersigned recommends that (1) Plaintiff's claims against Defendants Lamb, Gracik, Russell, and Ingraham be dismissed; (2) Plaintiff's claim against Defendant Karnitz go forward; (3) Plaintiff's claims against Defendant Spitters, in Counts II-IV of Plaintiff's amended complaint, be dismissed; and (4) Plaintiff's claim against Defendant Spitters, in Count V of Plaintiff's amended complaint, go forward. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                Respectfully submitted,


Date:  August 18, 2015        /s/ Ellen S. Carmody
                ELLEN S. CARMODY
                United States Magistrate Judge