UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWIN LEWIS,

    Plaintiff,                                          Hon. Janet T. Neff

v.                                                      Case No. 1:14-cv-917

DANIEL SPITTERS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Spitters' Motion for Summary Judgment. (ECF No. 52). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

## BACKGROUND

Plaintiff initiated this action on August 28, 2014, against the following medical care providers and prison officials: (1) Daniel Spitters; (2) Mark Karnitz; (3) Judy Gracik; (4) Raymond Ingraham; (5) Patricia Lamb; and (6) Richard Russell. Plaintiff subsequently amended his complaint. (Dkt. #10). In his amended complaint, Plaintiff asserts five distinct claims.

In Count I, Plaintiff alleges that Defendants Karnitz, Lamb, Gracik, Russell, and Ingraham refused to provide him with a special accommodation for "athletic style" shoes. In Count II, Plaintiff alleges that Defendants Spitters, Lamb, Gracik, and Russell failed to approve his request for a particular audio assistive device. In Count III, Plaintiff alleges that Defendants Spitters, Lamb, Gracik, and Russell failed to provide him with special "box toe" shoes. In Count IV, Plaintiff alleges that

Defendants Spitters, Lamb, Gracik, and Russell failed to provide him with a permanent bottom bunk accommodation. Finally, in Count V, Plaintiff alleges that Defendants Spitters, Gracik, and Russell improperly discontinued his pain medications. Plaintiff alleges that these actions violated his rights under the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth Amendment.

The majority of Plaintiff's claims have since been dismissed. At this juncture, the only claims remaining are that: (1) Defendant Spitters improperly discontinued Plaintiff's pain medications (Count V), and (2) Defendant Karnitz refused to provide Plaintiff with a special accommodation for "athletic style" shoes (Count I). Defendant Spitters now moves for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v.*

*Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the

burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Plaintiff makes the following allegations in his amended complaint. On September 18, 2012, Dr. Kenneth Jordan diagnosed Plaintiff with osteoarthritis of the acromioclavicular joints.[1] (PageID.134). Plaintiff was prescribed Meloxican.[2] (PageID.134). On March 11, 2014, Plaintiff submitted a request for a refill of his Meloxican prescription. (PageID.134). The following day, Physician's Assistant Spitters responded to Plaintiff that his prescription had already expired and that his chart was "sent to medical provider with your request for renewal." (PageID.134). On March 24, 2014, Plaintiff submitted a second request for a refill of his Meloxican prescription. (PageID.135). On March 27, 2014, a nurse responded to Plaintiff that "your prescription expired on 3/6/14 and no refills remaining. A chart review has been sent to the MP [medical provider] with your request." (PageID.135).

Dissatisfied with these responses, Plaintiff filed a Step I grievance about the matter on April 10, 2014. (PageID.135). Plaintiff's grievance was denied by two nurses who informed Plaintiff that the medical provider denied his request for a refill of Meloxican because "there was no objective evidence indicating need for renewal of Meloxican." (PageID.136). The medical provider further

---

[1] The acromioclavicular (AC) joint is formed by the connection of the scapula (shoulder blade) with the clavicle (collarbone). *See* A Patient's Guide to Osteoarthritis of the Acromioclavicular Joint, available at http://www.houstonmethodist.org/orthopedics/where-does-it-hurt/shoulder/osteoarthritis-acromioclavicular-joint/ (last visited on June 16, 2016). The AC joint "is a common spot for osteoarthritis to develop in middle age." *Id.*

[2] Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) used to treat arthritis. *See* Meloxicam, available at http://www.webmd.com/drugs/2/drug-911/meloxicam-oral/details (last visited on June 16, 2016). Meloxicam is also known as Mobic. *Id.*

concluded that Plaintiff "could purchase over the counter (OTC) medications to treat his symptoms." (PageID.136).  Plaintiff pursued the matter without success through all three steps of the grievance process.  (PageID.137-40).  On July 31, 2014, Plaintiff went to Health Care to meet with Defendant Spitters, but this appointment was cancelled "due to a critical incident requiring Health Care Services." (PageID.139).  As of October 15, 2014, this appointment had not been rescheduled.  (PageID.139, 150). Plaintiff alleges that Defendant Spitters' refusal to provide him with a refill of Meloxican violated his rights under the Eighth Amendment, Americans with Disabilities Act, and Rehabilitation Act.

I.		**Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Spitters has submitted copies of the relevant portions of Plaintiff's medical records, as well as an affidavit. (PageID.541-49, 585-

658). This evidence reveals that Plaintiff suffers from "mild" osteoarthritis of the AC joint for which Plaintiff has consistently received treatment and medication. (PageID.541-49, 585-658). Notably, contrary to the assertions in Plaintiff's amended complaint, Dr. Jordan did not prescribe Plaintiff Meloxican, but instead prescribed Ibuprofen. (PageID.544, 599-600). Subsequent care providers likewise did not prescribe Meloxican, but instead continued to prescribe Ibuprofen. (PageID.544-46, 601-39).

On January 2, 2014, Plaintiff was examined by Defendant Spitters. (PageID.546, 640-42). Plaintiff reported that while taking Ibuprofen "worked," he was experiencing "diuretic side effects and edema." (PageID.546, 640). Plaintiff specifically requested that he be prescribed Mobic instead. (PageID.546, 640). An examination revealed no evidence of Plaintiff's alleged side effects which caused Spitters to become "suspicious that [Plaintiff] had an agenda to obtain Mobic, perhaps because he used another inmate's and needed to pay that inmate back." (PageID.546, 641). Spitters nevertheless agreed to issue to Plaintiff a two-month prescription of Mobic. (PageID.546, 642).

On or about March 12, 2014, Plaintiff requested that his Mobic prescription be refilled. (PageID.547, 644). A nurse referred the matter to a "medical provider." (PageID.547, 644-45). On March 14, 2014, Dr. Richard Worel denied Plaintiff's refill request. (PageID.547, 646). The doctor observed that Plaintiff's "complaints appear to be subjective & w/o objective findings to confirm." (PageID.646). The doctor also noted that Plaintiff could purchase over-the-counter medication as needed. (PageID.646). On March 27, 2014, Plaintiff submitted another request to receive Mobic which was denied by Dr. Worel. (PageID.547, 648). Defendant Spitters asserts that he "was not involved in Dr. Worel's decision making process." (PageID.547-48).

In response to the present motion, Plaintiff disputes Defendant Spitters' "suspicion" that he had an ulterior motive for seeking Mobic, but otherwise presents no evidence refuting or calling into question the evidence submitted by Defendant Spitters described immediately above. (PageID.681-88). Interpreted in a light most favorable to Plaintiff, the evidence reveals two things each of which constitute a sufficient basis for granting Defendant's motion for summary judgment on this claim. First, the evidence indicates nothing more than a disagreement between Plaintiff and his care providers regarding the most appropriate medication to treat his shoulder pain. As noted above, such simply does not implicate the Eighth Amendment. Second, even if the refusal to provide Plaintiff with Mobic did implicate the Eighth Amendment, Plaintiff cannot establish that Defendant Spitters made or was involved in that particular treatment decision. Accordingly, the undersigned recommends that Defendant Spitters' motion for summary judgment be granted as to Plaintiff's Eighth Amendment claim.

**II.        Americans with Disabilities Act and Rehabilitation Act**

Plaintiff alleges that the failure by Defendant Spitters to provide him with refills of Meloxican violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132). To state a claim under Title II of the ADA, Plaintiff must establish: (1) he is a qualified person with a disability; (2) defendants are subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services,

programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). In other words, Plaintiff must establish that Defendant intentionally discriminated against him because of his disability. *Id.* Title II of the ADA applies to state prisons and inmates. *See Mingus*, 591 F.3d at 482.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States. . .shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance. . .." 29 U.S.C. § 794(a). Claims asserted under the Rehabilitation Act are analyzed similarly to claims asserted under the ADA. *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act"). While both provisions prohibit discrimination against the disabled, the Rehabilitation Act, unlike the ADA, expressly prohibits discrimination *solely* on the basis of disability. *See Lee*, 636 F.3d at 250.

Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act fail for two reasons. First, as detailed in the preceding section Plaintiff cannot establish that Defendant Spitters denied him the medication refill he requested. The evidence reveals that the decision was instead made by Dr. Worel. Defendant Spitters has presented evidence that he was not involved in that particular treatment decision and Plaintiff has presented no evidence suggesting otherwise. Thus, Plaintiff cannot establish that Defendant Spitters violated his rights under either provision. Second, even if the Court assumes that Plaintiff's diagnosis of "mild" osteoarthritis of the AC joint constitutes a "disability," Plaintiff has failed to present any evidence that he was denied a refill of Meloxican because of his alleged disability. Rather, the evidence reveals that Plaintiff's medication request was denied

because Dr. Worel, in the exercise of his medical judgment determined that such was not appropriate. Accordingly, the undersigned recommends that Defendant Spitters' motion for summary judgment be granted as to Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant Spitters' Motion for Summary Judgment, (ECF No. 52), be **granted**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  June 22, 2016                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge